No. 32,645

L. C. DICK, *Appellee*, v. P. A. DICK, *Appellant*.

(58 P. 2d 1125)

Opinion filed July 3, 1936.

*John Madden, John Madden, Jr.,* and *F. M. Field,* all of Wichita, for the appellant.

*C. R. Sowers,* of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action for damages for personal injuries alleged to have been sustained by an assault and battery. A jury trial resulted in judgment for plaintiff. Defendant has appealed.

Plaintiff and defendant are brothers, past middle life. Each has a family, and they live near each other on farms in Sedgwick county. It appears that on October 14, 1934, plaintiff's son Harold, a young man of age, was driving an automobile which collided with an automobile owned by defendant, in which his son Russell and daughter Dorothy Jean were riding, in such a way that the daughter was seriously injured and the automobile damaged. It appears, also, Harold had admitted the collison was his fault and agreed to pay for repairing defendant's automobile and the doctor bill for the treatment of Dorothy Jean. On October 22 plaintiff, driving five mules hitched to a drag, was dragging the township road in front of defendant's farm. He testified that as he drove by defendant's house his mules stopped, he looked up and saw an automobile standing in front of them; that defendant got out of the car and came back to where he was and asked if he were going to pay for the wreck the boys had; that plaintiff told him "No," as it was the boys' business; they were both of age, and he could settle with the boys; that defendant then said, "Take off your glasses or I will," and drew back and struck him in the face; that plaintiff had a T wrench on the drag, which he picked up; that defendant grabbed it from him and struck him on the side of the head. Plaintiff is not sure whether defendant struck him with the wrench or not, but he cut a gash on plaintiff's head and cheek. The mules ran away, plaintiff was knocked or fell off the drag, and defendant then jumped on him and kept beating him. He and a physician testified as to his injuries. Plaintiff's son, Harold, testified that a few minutes after this trouble defendant told him he had just got through giving his dad the worst licking he ever had.

Evidence on behalf of defendant was to the effect that plaintiff started the fight and that he did nothing more than was necessary to protect himself. In this he was corroborated, in part at least, by his wife, who testified she was washing on the screened porch and saw the trouble between the men. On rebuttal plaintiff testified there was a hedge along the road in front of defendant's property to within a few feet of where the trouble occurred. There it had

been cut down some years before and brush had grown up from the roots, some of them as much as five feet high, and that in his judgment defendant's wife, from the porch of their home, could not see him when he was on the ground in the road. The jury returned a verdict for plaintiff for $1,250. On the hearing of the motion for a new trial defendant offered affidavits to the effect that there was no hedge in front of defendant's home that would prevent his wife from seeing the trouble in the road. The court overruled defendant's motion for a new trial, but as a condition of doing so required plaintiff to accept a remittitur of the verdict to $500, which he did.

In this court appellant contends that while plaintiff's evidence made out a prima facie case, on the whole evidence the verdict should have been for defendant. It was the function of the jury and the trial court to weigh the conflicting evidence. We deal only with the question of whether there was sufficient substantial, competent evidence to sustain the judgment for plaintiff. There is no lack of that here.

Appellant contends the verdict resulted from false testimony of plaintiff given in rebuttal as to the ability of one on the porch of defendant's home to see the trouble in the highway. The point is not well taken. The question was before the jury when the case was being tried. The additional witnesses who gave affidavits used on the motion for rehearing furnished nothing more than cumulative evidence on the point, and no reason is shown why they were not called at the trial.

Appellant contends the fact that the trial court required a remittitur of the verdict indicates that it was the result of passion and prejudice. Obviously the trial court did not take that view. Neither can we take that view under the evidence. The amount plaintiff was entitled to recover depended, of course, upon the seriousness of his injuries. While other substantial bruises and injuries were shown by the evidence the most severe one, as testified to by plaintiff, was to his shoulder. The evidence disclosed plaintiff had been troubled with rheumatism for years, which had given him pain in that shoulder. It is quite possible the court was of the view that the injury to the shoulder was not caused or greatly increased by his encounter with defendant. The jury might very well have taken a different view of that. On the record before us it would be difficult for us to say that the verdict returned by the jury was so excessive that a remittitur was required. Certainly it was not large

enough to indicate such bias or prejudice as required the granting of a new trial.

Appellant further argues that the jurors did not give proper attention to the evidence, that one of the jurors was asleep while defendant was testifying. The record discloses the court thought the juror was asleep and, while admonishing the jury at an intermission, reprimanded a juror by name for being asleep. On the hearing of the motion for a new trial there was testimony that he was not asleep, but had simply relaxed and partly closed his eyes while listening to the testimony. It was not error for the court to overrule the motion for a new trial on this ground.

We find no error in the record. The judgment of the court below is affirmed.